IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MUISIDEEN ADETIKUNBO ABIMBOLA,<br>    *Plaintiff*,<br><br>    v.<br><br>HILLARY RODHAM CLINTON,<br>Secretary of State, *et al.*,<br>    *Defendants*. | Civil Action No. ELH-11-3677 |

**MEMORANDUM**

Muisideen Adetikunbo Abimbola, plaintiff, has filed a "Petition for Mandamus and Declaratory Judgment" ("Complaint") (ECF 1), against the Secretary of State and other federal officials,[1] seeking a declaratory judgment stating that he is a citizen of the United States or, in the alternative, a writ of mandamus directing the defendants to issue a United States passport to him.  Now pending for decision are defendants' Motion to Dismiss ("First Motion") (ECF 9), on the basis of lack of subject matter jurisdiction and failure to state a claim, and defendants' subsequent "Motion to Dismiss the Complaint as Moot" ("Second Motion") (ECF 11).  Plaintiff has filed an Opposition (ECF 10) to the First Motion.  No hearing is necessary to resolve the issues presented.  *See* Local Rule 105.6.  For the reasons that follow, both motions will be denied.

**Background**

According to his complaint, plaintiff was born in 1977 in Washington, D.C., to his father, Mutiu A. Abimbola, and his mother, Toyin A. Abimbola.  Complaint ¶ 8.  Claiming that he is a United States citizen by virtue of his birth in the United States, plaintiff filed an application for a

---

[1] The defendants are sued only in their official capacities.

United States passport on October 19, 2010.[2] Plaintiff filed his Complaint in the instant case over a year later, on December 21, 2011. As of that date, no decision had been issued as to the 2010 passport application.

Although a decision on plaintiff's 2010 passport application had not been rendered, plaintiff had received correspondence from the State Department as early as 2003, asserting that he was not a United States citizen because, according to the State Department, at the time of Mr. Abimbola's birth, his father, Mutiu Abimbola, was an accredited Nigerian diplomat. Under the Fourteenth Amendment to the United States Constitution and 8 U.S.C. § 1401(a), a person who is born in the United States "and subject to the jurisdiction thereof" is a citizen by birth. In *United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898), the Supreme Court held that "children of foreign sovereigns or their ministers" are not citizens, even if born in the United States, because the children of foreign diplomats are not "subject to the jurisdiction" of the United States.

According to plaintiff, the State Department maintained that a person named "Mertice A. Abimbola," who was an attaché to the Embassy of Nigeria at the time of plaintiff's birth, was plaintiff's father. Because Mertice Abimbola was entitled to diplomatic immunity and privileges, the State Department determined that plaintiff, Mertice's son, did not become a citizen by birth, despite his having been born in the United States. Plaintiff contends that this is a case of mistaken identity: his father's name is Mutiu, not Mertice. Although plaintiff's father, Mutiu, was an employee of the Nigerian embassy, plaintiff insists that his father was not a diplomatic-level employee. Thus, plaintiff reasons that he is not subject to the longstanding

---

[2] Plaintiff previously held a United States passport, issued in 1998, but that passport was subsequently confiscated by agents of the Department of Homeland Security. *See* Complaint ¶¶ 9-13. The issuance and confiscation of the earlier passport are not relevant to the arguments presented in defendants' motions.

exception to the principle of citizenship by birth applicable to the children of foreign diplomats, as articulated in *Wong Sun Ark*.

Additional facts are presented in the Discussion.

## Discussion

As noted, plaintiff seeks two alternative remedies. First, he seeks a declaratory judgment stating that he is a United States citizen. Such declaratory relief is authorized by 8 U.S.C. § 1503(a), which states:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of [the Declaratory Judgment Act, 28 U.S.C. § 2201,] against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.[3] An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

The denial of a passport application on the basis of non-citizenship is a denial of a "right or privilege as a national of the United States," giving rise to a claim under § 1503(a). *See, e.g.*, *Whitehead v. Haig*, 794 F.2d 115, 119 (3d Cir. 1986). "A suit under section 1503(a) is not one for judicial review of the agency's action. Rather, section 1503(a) authorizes a *de novo* judicial determination of the status of the plaintiff as a United States national." *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985). In an action under § 1503(a), the "burden of proof is

---

[3] There is no allegation in the present case that plaintiff's claim of citizenship arose or is at issue in a removal proceeding.

on the claimant to prove that [he or] she is an American citizen." *De Vargas v. Brownwell*, 251 F.2d 869, 871 (5th Cir. 1958).

Second, and in the alternative, plaintiff seeks a writ of mandamus compelling defendants to issue a passport to him. Jurisdiction to issue a writ of mandamus "to compel an officer of employee of the United States or any agency thereof to perform a duty owed to the plaintiff" is granted by 28 U.S.C. § 1361. However, mandamus is a "'drastic'" remedy, which is "reserved for 'extraordinary situations'" where the petitioner "has 'no other adequate means to attain the relief he desires.'" *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999) (quoting *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 402-03 (1976)). A party seeking a writ of mandamus must demonstrate that

> (1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances.

*Rahman*, 198 F.3d at 511.

In their First Motion, defendants contended that plaintiff's claim under § 1503(a) should be dismissed for "fail[ure] to exhaust administrative remedies because the Department of State has not denied his passport claim." First Motion at 6. Defendants indicated that "the investigation undertaken by the State Department has revealed contradictory information about the citizenship of the Plaintiff." *Id.* at 2-3. "Since the agency cannot yet decide whether to grant or deny the passport application," defendants reasoned, "the Court does not have subject matter jurisdiction." *Id.* at 3. Moreover, because there was no clear ministerial duty to issue plaintiff a passport in the absence of a clear showing that he is a United States citizen, defendants argued that plaintiff's mandamus claim also was deficient. *Id.*

The "contradictory information" uncovered by the State Department's investigation concerned the diplomatic status of plaintiff's father. Defendants stated: "Although the father currently denies he was in the United States as a diplomat, in an interview with [the Department of State] in 2003, Mutiu Abimbola stated he was in the United States on diplomatic status from 1976 to 1979 as the second secretary of defense and that he did have diplomatic privileges and immunities." *Id.* at 5. Recognizing that "'Mertice' and 'Mutiu' are different names," defendants argued that "there is no way of discerning if this is a misprint, a nickname or some other indication of identity," and "State strongly suspects the M.A. Abimbola on the Diplomatic List [for the Nigerian embassy during the relevant period] to be Plaintiff's father." *Id.* According to defendants, their investigation had been "more complex and time-consuming than anticipated." *Id.* at 6. They asked the Court to dismiss plaintiff's complaint or, in the alternative, stay the case and ask the State Department to provide periodic status reports, pending the completion of the investigation. *See id.* at 9.

Plaintiff opposed defendants' request to dismiss or stay the case. Plaintiff noted that his passport application had been pending for over a year before he filed his complaint, but that the issue of whether his father enjoyed diplomatic status had been pending before the State Department since at least 2003. Plaintiff argued that, "if the Defendants cannot prove at this juncture—following what should have been a 10 year investigation—that Mr. Abimbola is *not* a U.S. citizen, then Defendants should be compelled to reissue his passport." Opposition at 8-9 (emphasis in original). Moreover, plaintiff claimed that his "mandamus claim is properly before this Court" because he "has exhausted his available remedies as his passport application was filed 2 years ago, in October 2010, but has yet to be adjudicated." *Id.* at 10.

On November 2, 2012, shortly after briefing of the First Motion was complete, but before any ruling had been issued by the Court, defendants filed the Second Motion. In the Second Motion, defendants assert that the State Department has issued a final decision denying plaintiff's application for a passport on the basis that his father was an accredited foreign diplomat at the time of his birth and, as such, plaintiff is not a United States citizen. As an exhibit to the Second Motion, defendants have submitted a letter to plaintiff from the Director of the State Department's National Passport Center, dated October 24, 2012, denying his 2010 passport application on that basis. *See* Ex.A to Second Motion (ECF 11-1). In light of the denial of plaintiff's passport application, defendants claim that plaintiff's complaint is now moot, and should be dismissed.

A plaintiff may only proceed under 8 U.S.C. § 1503(a) "after the final administrative denial of [a] right or privilege" of citizenship. Although it does not appear that the Fourth Circuit has addressed the issue in a reported opinion, there is ample precedent for the proposition that undue delay in determination of a passport application may be construed as a final administrative denial within the meaning of the statute. *See, e.g.*, *Yung Jun Teung v. Dulles*, 229 F.2d 244, 246 (2d Cir. 1956) ("[A] passport may be denied on the statutory ground by a refusal to determine a claim of citizenship for an unreasonable length of time."); *Chin Chuck Ming v. Dulles*, 225 F.2d 849, 852-53 (9th Cir. 1955) (holding that failure to act on passport application for "over a year and three months" constituted denial under prior codification of § 1503(a)); *Dulles v. Quan Yoke Fung*, 237 F.2d 496, 497 (9th Cir. 1956) (holding that failure to act on passport application for seven months constituted a denial under prior codification of § 1503(a)); *see also Rivera v. Albright*, 76 F. Supp. 2d 862, 864 (N.D. Ill. 1999); *Moy Yee Mon v. Dulles*,

161 F. Supp. 924, 926 (E.D. Mich. 1958); *Lee Kai Ngoon v. Dulles*, 138 F. Supp. 84, 85 (D. Mass. 1956).[4]

I need not decide whether, under the circumstances of this case, the State Department's failure to issue a decision on plaintiff's passport application within the more-than-one-year period before he filed suit or the nearly two-year period before the First Motion was filed should be deemed a denial of the application. As defendants point out in their Second Motion, as of October 24, 2012, the State Department issued a final denial of plaintiff's application.

In some circumstances, a denial of a passport application is subject to further administrative review before a final decision is rendered, pursuant to 22 C.F.R. part 51, subpart F. However, a denial of a passport on the basis of "[n]on-nationality," such as in this case, is exempt from further administrative review. 22 C.F.R. § 51.70(b)(1). Notably, when a passport application denial is subject to further administrative review, the notice of denial must inform the applicant of the "procedures for review." 22 C.F.R. § 51.65. The notice of denial here did not do so. *See* Ex.A to Second Motion (ECF 11-1).

Contrary to defendants' position, the recent denial of plaintiff's passport application does not render moot his claim for adjudication of his citizenship status under 8 U.S.C. § 1503(a). It is quite the opposite: the State Department's denial of the application is unquestionably the "final administrative denial of [a] right or privilege" of citizenship, making plaintiff's § 1503(a) claim

---

[4] The concept that a failure to determine a claim for an unreasonable length of time may constitute a denial of the claim accords with the provisions of the Administrative Procedure Act authorizing federal courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and with the many statutes that contain so-called "deemer" clauses by which a claim is deemed denied if the agency does not act on it within a specific time period. *See, e.g.*, 28 U.S.C. § 2675(a) (provision of the Federal Tort Claims Act providing that the "failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim").

ripe for judicial consideration. As noted, plaintiff bears the burden of proof in this proceeding to demonstrate that he is a United States citizen. *See, e.g.*, *De Vargas*, *supra*, 251 F.2d at 871.

Perhaps it could be argued that the complaint that initiated this case in December 2011 was premature, and that plaintiff should refile his complaint now that a final denial has been issued. Such an argument would elevate form over substance, especially in the context of this case. As noted, it is quite possible that the State Department's failure to render a decision on plaintiff's passport application for over a year should be deemed a final denial of the application, regardless of the subsequent issuance of an explicit denial. And, in their First Motion, defendants themselves requested, albeit as an alternative request, that this case be stayed to allow the State Department the opportunity to issue a final decision as to plaintiff's passport application. Now that the State Department has done so, none of the commendable purposes of the requirement of administrative exhaustion would be served by dismissing plaintiff's suit and requiring him to file it anew tomorrow, in precisely the same posture.

In sum, defendants have denied plaintiff a right or privilege of citizenship, and so the Court possesses jurisdiction to adjudicate plaintiff's citizenship status under 8 U.S.C. § 1503(a). Therefore, defendants' motions will be denied.[5] An appropriate Order follows.

Date: November 6, 2012                           /s/
                                                 Ellen Lipton Hollander
                                                 United States District Judge

---

[5] In light of the fact that plaintiff's claim may be adjudicated under 8 U.S.C. § 1503(a), defendants may be correct that plaintiff's request for mandamus is not viable. However, there is no need at this juncture for the Court to resolve that issue definitively.